UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 22-20371-CIV-ALTMAN

| | |
|---|---|
| JONATHAN MULLANE,<br><br>      Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE and U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>      Defendants. | |

**DEFENDANTS' MOTION TO SET ASIDE DEFAULT AND**
**<u>MEMORANDUM OF LAW IN SUPPORT</u>**

Defendants, United States Department of Justice and United States Securities and Exchange Commission, through the undersigned Assistant United States Attorneys and pursuant to Federal Rule of Civil Procedure 55(c), move to set aside the clerk's default entered on March 1, 2022 (Dkt. 29).

## INTRODUCTION

Plaintiff Jonathan Mullane ("Mullane"), appearing pro se, purports to bring this suit under the Privacy Act of 1974, 5 U.S.C. § 552a. He alleges that federal employees unlawfully disseminated a court hearing transcript, online media articles, a "timesheet," and other unspecified information from his personnel file to a legal publication in New York, officials at the U.S. Attorney's Office in Miami, SEC officials in Florida and Washington, D.C., the University of Miami School of Law, and the Massachusetts and Florida Boards of Bar Examiners.

Despite the fact that, upon the transfer of this case from the U.S. District Court for the District of Columbia, all pending deadlines were "terminated," (Dkt. 15), Mullane moved for and obtained a clerk's default on March 1, 2022, (Dkt. 29). In so moving, Mullane failed to confer with counsel for Defendants or advise the Court that Defendants' deadline to respond to the Complaint had been terminated and had yet to be reset.[1]

Even if the clerk's default were not erroneous at the outset, the default should nonetheless be summarily vacated. It is axiomatic that defaults are disfavored and that courts have a strong preference for determining cases on their merits. And this case falls well within the liberal standard for setting aside a default. For these reasons and those that follow, Mullane's surprise default should be set aside.

## BACKGROUND

### I.   Allegations in the Complaint

The allegations in the Complaint stem from Mullane's internship at the United States Attorney's Office for the Southern District of Florida ("USAO"), where he was assigned to work in the Asset Forfeiture Division. According to the Complaint, that section had handled

---

[1] On March 4, 2022, Mullane also moved for a default judgment. (Dkt. 30). Mullane did so despite the fact that, on March 3, the undersigned's office contacted Mullane and advised that the USAO, Middle District of Florida, would be defending this case, that the default was improper, and that Defendants would be promptly moving to set aside the default. (Mar. 3, 2022 Ltr., **Exhibit 1** hereto).

1

litigation related to a case in which his father, a Miami-based lawyer, was involved. (Dkt 1, ¶¶7-15). Mullane asserts that, prior to his internship, he had "assisted defense counsel" in that matter but was unaware that his father had made allegations of "unlawful conduct and unethical behavior" against the Miami-based prosecutors. (*Id.* ¶¶10-14, 36).

Mullane alleges that, at some point, he "questioned the propriety" of a supervisor's decision to assign him to cases that were "factually related" to the litigation involving his father, but his concerns were "summarily dismissed" by the supervisor of his internship. (*Id.* ¶¶16-18). Mullane then alleges that, he was subsequently "verbally abused" by another attorney. (*Id.* ¶19). These complaints too were dismissed, and Mullane was eventually told he should conclude his internship and that there was "no more office space" for him. (*Id.* ¶¶19-25).

All the while his internship was on-going, Mullane was a plaintiff in a civil action relating to his credit score in the Southern District of Florida. (*Id.* ¶29); *see also Mullane v. Barclays Bank Del., Inc.*, No. 18-20596-CIV (S.D. Fla.). On April 9, 2018, the presiding judge, Honorable Frederico A. Moreno, left a voicemail on Mullane's cell phone ordering Mullane to appear in Court the following morning. (*Id.* ¶31). In Court on April 10, 2018, Judge Moreno admonished Mullane for "corruptly abusing his 'status' as a USAO intern by allegedly using his employment to request a certified copy of a record from a clerk" relating to his aforementioned civil law suit against Barclays Bank. (*Id.* ¶32). Mullane alleges that Judge Moreno further questioned Mullane's father's competency as an attorney and criticized him for "having submitted certain unrelated filings" as part of a civil case in Massachusetts. (*Id.* ¶¶34-35). Mullane further alleges that, at the hearing, Judge Moreno referred specifically to Mullane's position at the USAO: "It is your last week. It will be your last week and you will never be able to work at the U.S. Attorney's Office again." (*Id.* ¶41).

Mullane accuses Judge Moreno of making "inexplicable and highly-improper false accusations" and that Mullane's admonishment at the April 10 hearing was a pretext for terminating Mullane's internship with the USAO. (*Id.* ¶¶37-40). Mullane then asserts that U.S. Attorney Benjamin Greenberg of the Southern District of Florida personally called Judge Moreno and requested assistance in terminating Mullane's internship. (*Id.*). After the hearing, Mullane's supervisor in the USAO offered to provide him legal advice in handling Mullane's

troubles and suggested that Mullane order the transcript of the hearing. (*Id.* ¶¶42-45). Mullane obtained a copy of the publicly-available transcript and emailed it to his supervisor (*Id.* ¶46).

On April 30, 2018, an article in "a national online tabloid" discussed the April 10, 2018 hearing under the headline, "Judge Detonates Pro Se Law Student so Hard I Now Must Defend a Dumb Kid." (*Id.* ¶48). The article linked to the transcript of the hearing. (*Id.* ¶49). Mullane suspects that his supervisor had transmitted the transcript to the online publication. (*Id.* ¶¶50-54). Mullane also alleges that his supervisor (AUSA Lehr) and "her Miami colleagues," motivated by a desire to retaliate against Mullane and to impugn his reputation, also forwarded the transcript to "numerous individuals" within the USAO and to Florida-based SEC employees "such as Lisa T. Roberts," the University of Miami Law School, the Massachusetts Board of Bar Examiners, and the Florida Board of Bar Examiners. (*Id.* ¶¶54-63). Mullane also suspects that AUSA Lehr transmitted "personal information regarding [Mullane] and his employment within the agency," including information from his "personnel file and USAO timesheet." (*Id.* ¶57). Mullane also asserts that "personnel records" were sent to the Executive Office of United States Attorneys and that a "factually-erroneous" performance evaluation was sent to the University of Miami School of Law. (*Id.* ¶¶60, 64).

According to the Complaint, the SEC's Miami office subsequently rescinded Mullane's paid internship at the agency's Washington D.C. office that Mullane claims to have been promised "if he were to agree to first work as an unpaid summer intern." (*Id.* ¶¶74-80). In addition, Mullane alleges that the USAO made "false allegations" of unidentified "criminal conduct" to the Boards of Bar Examiners in Massachusetts and Florida, and Mullane was subsequently denied admittance into both bars. (*Id.* ¶¶81-82).

**II.      Procedural Background**

On August 11, 2021, Mullane commenced this civil action by filing a Complaint in the U.S. District Court for the District of Columbia, alleging a single claim under The Privacy Act of 1974 (the "Privacy Act"), 5 U.S.C. § 552a. Mullane claims the DOJ violated the statute when the USAO "unlawfully transmitted" Plaintiff's "personnel file and timesheet" to third parties. (*Id.* ¶90). In addition, Mullane asserts a Privacy Act violation based on his allegation that "numerous USAO and SEC employees circulated defamatory information such as the April 10, 2018 hearing transcript and certain defamatory news articles" within their agencies. (*Id.* ¶94). Mullane seeks declaratory, injunctive, and monetary relief. (*Id.* p.18). Mullane

erroneously served the Complaint on August 16, 2021, purporting to serve the Complaint himself. (Dkt. 3); *but see* Fed. R. Civ. P. 4(c)(2).

Defendants responded to the Complaint by moving to transfer the case pursuant to 28 U.S.C. § 1404(a), from the U.S. District Court for the District of Columbia to the Southern District of Florida, given this case's lack of any meaningful connection to D.C. and evident ties to the Southern District of Florida. (Dkts. 6, 6-1). After obtaining an extension, Mullane responded to the motion to transfer. (Dkts. 8, 11, 12).

The Court (the District of Columbia) held a hearing on Defendants' motion to transfer. On February 3, 2022, the Court granted Defendants' request and transferred this case to the Southern District of Florida, where it is now pending. (Dkt. 15). In having the case transferred, the Court ordered that all then-pending deadlines be terminated:

> **ORDERED** that the Clerk of the Court shall forthwith **TERMINATE** all remaining deadlines in this case and **TRANSFER** the case file to the United States District Court for the Southern District of Florida. It is further

(*Id.* (emphasis added)). Upon having been transferred to this District, the first five Judges assigned to this case recused themselves. (Dkts. 18, 20, 22, 24, 25). To date, no deadline to respond to the Complaint has been set by the Court.

Upon the transfer of this case on February 4, 2022, the USAO for the Southern District of Florida received notice of the transfer from the USAO for the District of Columbia. The USAO, Southern District of Florida, promptly contacted the Executive Office of the United States Attorneys ("EOUSA") regarding whether its office should be recused from defending this case based on Mullane's claims that employees of the same office had committed the Privacy Act violations alleged. (Lee Decl., **Exhibit 2** hereto, ¶¶1-2). The USAO, Southern District of Florida, prepared a request for the EOUSA's opinion and approval for recusal from this instant case, which must be approved by the Associate Deputy Attorney General, U.S. Department of Justice. (*Id.* ¶4). On February 24, 2022, the USAO, Southern District of Florida, received notice that its recusal request had been approved and that this case would be defended by the USAO for the Middle District of Florida. (*Id.* ¶5).

4

Immediately upon receiving notice related to this case, the USAO, Middle District of Florida, promptly mobilized to obtain appointment as Special Attorneys to appear in this matter and to obtain filing credentials in the Southern District of Florida. Counsel also sent a letter to Mullane advising that Defendants intend to set aside the default and requesting to confer on such request. (Ex. 1). After obtaining appointment as a Special Attorney, the undersigned then completed the training and requested filing credentials from the Southern District of Florida on March 3, 2022. The undersigned received his filing credentials on March 5, 2022, at 6:30 a.m., and promptly filed this motion.

## ARGUMENT

### I. The Clerk's Default Was Erroneously Entered.

#### A. Plaintiff's Motion for Default Violated the Local Rules.

Mullane failed to confer with counsel for Defendants prior to filing the motion for default. "Local Rule 7.1(a)(3) requires counsel to meet and confer before filing any motion, with some exceptions, none of which include motions for default." *United Am. Corp. v. Bitmain, Inc.*, No. 18-cv-25106, 2019 WL 10058715, at *4-5 (S.D. Fla. Nov. 22, 2019) (citing S.D. Fla. L.R. 7.1(a)(3)). "Counsel must then include, in the motion, a certificate that he or she conferred with opposition counsel or could not confer." *Id.* (citing S.D. Fla. L.R. 7.1(a)(3)). "The rule warns that '[f]ailure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion and impose on counsel an appropriate sanction." *Id.* (citing S.D. Fla. L.R. 7.1(a)(3)). The conferral requirements also apply equally to pro se litigants. *See Novashen v. Bridgewater Assocs., LP*, No. 13-cv-61535, 2016 WL 3902580, at *1 (S.D. Fla. Feb. 25, 2016) (admonishing pro se plaintiff for failing to confer prior to filing motion); *see also Stuart v. Ryan*, No. 18-cv-14244, 2019 WL 1235024, at *2 (S.D. Fla. Mar. 11, 2019) (noting that Rule 7.1(a)(3) applies to "counsel for movant or the movant (in a pro se case)), *reversed on other grounds* 818 F. App'x 858.

Here, Mullane neither conferred with counsel for Defendants nor included the required certification in his motion for clerk's default. (Dkt. 26). Had he done so, counsel for Defendants would have explained to him that the deadline to respond to the Complaint had not been set and that Defendants were not in default. Mullane's failure to comply with the conferral requirements, in itself, favors setting aside the default. *See* S.D. Fla. L.R. 7.1(a)(3) ("Failure to comply with the requirements of this Local Rule may be cause for the Court to

5

grant or deny the motion and impose on counsel an appropriate sanction."); *see also Moradel v. Casa de Puelblo, Inc.*, No. 07-cv-23080, 2018 WL 7075125, at *1 (S.D. Fla. Dec. 6, 2018) (noting that "Court may deny the Motion" for failing to confer, "on this basis alone").

### B.   Defendants Were Not in Default.

Defaults are to be set aside when entered in error. *See Machowski v. DCT Props., LLC*, No. 20-cv-1707, 2021 WL 2980592, at *2 (C.D. Cal. Jan. 4, 2021) ("Plaintiff's premature request for entry of default alone is sufficient to justify setting aside the clerk's entry of default."); *see also Choi v. Ace Am. Ins. Co.*, No. 4:21-cv-10020-JEM, 2021 WL 2953630, at *3-4 (S.D. Fla. June 29, 2021) (default entered by clerk was "premature" and therefore subject to vacatur (citing *Hester v. Gulfstream Prop. & Cas. Ins. Co.*, No. 5:19-cv-170, 2019 WL 8063349, at *2 (N.D. Fla. Nov. 8, 2019)).

Here, the deadline to respond to the Complaint had not run. First, the transferor Court's November 5, 2021 Minute Order held that the "the deadline by which the defendants must file their answer or otherwise respond to the plaintiff's Complaint is VACATED pending further order of the court." To date, there has been no Order setting a deadline to respond to the Complaint.

Second, in ordering the transfer of this case, the transferor Court expressly "terminate[d] all remaining deadlines in this case." (Dkt. 15). The only deadlines outstanding at that time would have included the yet-to-be-set deadline to respond to the Complaint and other preliminary deadlines. *E.g.*, Dkt. 9 (discussing preliminary deadlines); Fed. R. Civ. P. 16(b) (scheduling order), 26(a)(1)(C) (initial disclosures), 26(f) (preliminary case management conference). Following the transfer of this case to the Southern District of Florida, the deadline to respond to the Complaint has yet to be reset. Indeed, this case resulted in several recusals and was only recently assigned a District Judge. Simply put, because the deadline had not run at the time of the clerk's default, the default was erroneous and therefore must be set aside.

To be sure, Mullane's motion for default surmises that the deadline to respond to the Complaint ran on February 25. Mullane reaches this conclusion by extrapolating (i) that the Order transferring the case "granted" Defendants' motion to transfer; (ii) that the motion to transfer had appended a request to extend the deadline to respond to the Complaint to 21 days

6

from transfer or an order denying transfer; and (iii) that, ipso facto, the granting of the motion and transfer triggered the 21-day clock, which ran on February 25.

But Mullane's request for default fails to acknowledge that the Order transferring this case expressly "terminate[d] all remaining deadlines in this case." (Dkt. 15). Mullane's request otherwise has no explanation for how the Order imposed a deadline to respond to the Complaint, all the while it expressly stated that all deadlines were "terminate[d]." Insofar as Mullane now argues that it would be an "absurd interpretation" for the transferor Court to have terminated the response deadline because "then Defendants would never have to answer the complaint at all in this action," (Dkt. 30, p.8 n.5), Mullane fails to understand how transferring a case works—upon transfer (and upon assignment to a District Judge), the transferee court will then impose its own local rules, case management procedures, and deadlines.

## II. The Clerk's Default Should Otherwise Be Set Aside.

Even if (a) Mullane's motion did not violate the Local Rules and (b) the clerk's default was not erroneous, the default should nonetheless be set aside based on this Court's strong preference for adjudicating cases on the merits.

"The Court has considerable discretion in deciding whether to set aside a default." *Access 4 All Inc. v. 300 Bldg. Condo. Ass'n*, No. 21-cv-23594, 2022 WL 378237, at *1 (S.D. Fla. Jan. 6, 2022) (quotation omitted) (citing *Robinson v. United States*, 734 F.2d 735, 739 (11th Cir. 1984)). "The Eleventh Circuit has held that defaults are disfavored because of the strong policy of determining cases on their merits." *Id.* (quotation omitted) (citing *Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993)). "A party seeking to vacate a default must only make a bare minimum showing to support the claim for relief." *Id.* (quotation omitted) (citing *Jones v. Harell*, 858 F.2d 667, 669 (11th Cir. 1988)).

"Rule 55(c) of the Federal Rules of Civil Procedure provides that a court may set aside an entry of default for good cause." *Id.* (citing Fed. R. Civ. P. 55(c)). "The good cause standard is less stringent than the standard used for setting aside a default judgment." *Id.* (citing *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990)). "Good cause is not subject to a precise formula and courts consider a number of factors when determining whether good cause exists." *Id.* (citing *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996)). Those factors include:

7

> [W]hether (1) the default was culpable or willful, (2) setting aside the default would prejudice the adversary, (3) the defaulting party presents a meritorious defense, (4) the public interest was implicated, (5) there was significant financial loss to the defaulting party, and (6) the defaulting party acted promptly to correct the default.

*Id.* (citing *Compania Interamericana*, 88 F.3d at 951). Courts need not consider every factor. *Id.*

Here, all relevant factors strongly favor setting aside the default. <u>Factor 1 (willfulness).</u> The first factor strongly favors setting aside the default. Willfulness requires "intentional or reckless disregard for judicial proceedings," whereas a default is not considered willful where there is only "a brief delay resulting from, as examples, inadvertence of mistake or confused litigation or case management strategy." *United Am.*, 2019 WL 10058715, at *3 (quotations omitted).

There was no willfulness by Defendants. As discussed above, *supra* Part I.B, the deadline to respond to the Complaint had not run, because upon the transfer of this case to the Southern District of Florida, the transferor Court "terminate[d]" all deadlines. Since then, the deadline to respond to the Complaint has not been set. AUSA Lee even inquired about the deadline and was advised that the deadlines had been terminated. (Lee Decl. ¶3). Even if Mullane's strained reading of the transferor Court's Order (Dkt. 15) were correct and that the 21-day clock had begun to run, Defendants' interpretation of that Order was in the least reasonable. Specifically, Defendants interpreted that Order's directive to "terminate all remaining deadlines" to mean that the deadline to respond to Complaint was "terminate[d]." This interpretation is further supported by the transferor Court's November 5, 2021 Minute Order, which held that the deadline to respond to the Complaint was "vacated pending further order of the Court"; the Court indicated that the deadline to respond to the Complaint would be affirmatively ordered.

<u>Factor 2 (prejudice to plaintiff).</u> The second factor strongly favors setting aside the default. There is no prejudice to Mullane. Indeed, it was Mullane that attempted to achieve a default by surprise, by seeking a default without conferring with counsel for Defendants. Such conduct should not be countenanced or awarded with a default. Whereas Mullane's application for default states (under penalty of perjury) that this "litigation" has been pending

8

since 2018, (Dkt. 27, ¶14), that is not true—the Complaint was filed August 11, 2021. In terms of timing, this case arrived in the Southern District of Florida one month ago. Despite the argument presented in Mullane's motion for default judgment (Dkt. 30), any delay since the initial filing of the Complaint is the result of Mullane having filed in a District with no discernible connection to this case. Even under Mullane's calculus, however, the Complaint was only due one week ago.

Nor is the fact that Mullane will now have to litigate this case on the merits cognizable "prejudice." *See* 10A Wright & Miller, *Fed. Practice & Procedure*, § 2699 (4th ed. 2020) ("Courts have ruled that the fact that [a] plaintiff would have to try the case on the meris if relief is granted is not the kind of prejudice that should preclude relief.").

Factor 3 (meritorious defense). The third factor strongly favors setting aside the default. The question here is not whether there is a "likelihood of success of a defense" but whether the defense is "entirely devoid of merit." *United Am.*, 2019 WL 10058715, at *4 (quotations omitted). A movant need only show a "hint of a suggestion" that the defense has merit. *Id.* (quotation omitted).

The allegations and claims in the Complaint suffer from a broad array of legal and factual shortcomings. From the legal perspective and under the Privacy Act, many of the purported records (which include publicly available documents and media reports) are either: (a) not protected records themselves; (b) not "contained in a system of records" or even alleged to be contained within such a system; or (c) not sufficiently identified (i.e., unspecified "personnel records"), so as to state a claim for relief. Further, many of the alleged disclosures are either: (a) not protected under the Privacy Act; or (b) otherwise exempt. Indeed, on the former, there is not a single allegation that the SEC disclosed any identified record. Furthermore, whereas the undersigned recently took over this case, his office is continuing to explore numerous potential affirmative defenses. This effort includes getting up to speed with respect to the various other litigation filed by Mullane and what, if any, preclusive effect resulted from those proceedings. *E.g.*, *Mullane v. Dep't Just., et al.*, No. 19-cv-12379 (D. Mass.); *Mullane v. Moreno*, et al., No. 20-21339 (S.D. Fla.).

From a factual perspective, many of the allegations in the Complaint are wrong as a matter of fact and facially implausible. One of the more apparent examples is Mullane's tale of a fanciful scheme by the U.S. Attorney and U.S. District Judge Moreno to have Mullane—

9

an intern—ousted from his internship at the USAO. Mullane spins this narrative to cover for the egregious conduct he undertook while interning and for which he was admonished. More specific examples include Mullane's repeated characterizations of himself as an "employee" and reference to "employment agreements" with the USAO and SEC and to promises of future employment—He was an intern, and these allegations are otherwise untrue. These examples are just a few of the numerous factual misstatements that abound in the Complaint.

Factor 4 (public interest). This factor favors setting aside the default or is otherwise irrelevant. The public's interest lies in having his case adjudicated on the merits. The public does not have an interest in furthering litigation by surprise default.

Factor 5 (financial loss to Defendants). This factor favors setting aside the default or is otherwise irrelevant. Whereas Defendants have not suffered any financial loss immediately following the default, the relief requested in this case does include monetary relief, and Mullane has communicated that he hopes to fast-track his damages claim via seeking a default judgment.

Factor 6 (diligence). This factor strongly favors setting aside the default. As discussed above, the transferor Court "terminate[d]" all deadlines, including any deadline to respond to the Complaint. (Dkt. 15). Defendants were thus not in default in the first instance. Furthermore, Defendants have exercised all diligence since this case was transferred to the Southern District of Florida. The USAO, Southern District of Florida, was notified of the transfer and then promptly considered recusal. The USAO, Southern District of Florida, then sought recusal from the EOUSA, which was later granted. Upon delegation of this case to the USAO, Middle District of Florida, this office immediately mobilized, worked to get up to speed with this case, prepare this motion, seek permission as Special Attorneys in the Southern District of Florida, and obtain CM/ECF credentials to be able to file pleadings in the Southern District of Florida. This motion was filed just days after the default and immediately upon the undersigned having obtained filing credentials.

Accordingly, even putting aside that Mullane's motion was deficient and that the default was erroneously entered, the default should be summarily set aside. All relevant factors favor setting aside the default. And doing so comports with this Court's strong preference for having cases adjudicated on the merits.

10

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court grant this motion and set aside the clerk's default (Dkt. 29), order that Defendants' response to the Complaint be due within 21 days of an Order setting aside the default, and grant Defendants such further relief as is just and proper.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Prior to filing this motion, counsel for Defendants conferred with Plaintiff in a good faith effort to resolve the issues raised in this motion, and Plaintiff advised that he objects to the relief requested in this motion.

Dated: March 5, 2022

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

/s/ Lacy R. Harwell, Jr.
Lacy R. Harwell, Jr.
Assistant United States Attorney
Fla. Bar No. 714623
Special Bar No. A5502873

400 W. Washington Street
Suite 3100
Orlando, FL 32801
Telephone: 407-648-7500
Facsimile: 407-648-7588
Email: Randy.harwell@usdoj.gov

Attorneys for Defendants
Acting Under Authority Conferred by 28
U.S.C. § 515

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 5, 2022, I caused the foregoing document to be sent by email and U.S. Mail to the following:

Jonathan Mullane
30 Donnell Street
Cambridge, MA 02138
j.mullane@icloud.com

/s/ Lacy R. Harwell, Jr.
Assistant United States Attorney